2020 IL App (2d) 191053-U
No. 2-19-1053
Order filed September 3, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| TORRY W. KIECKHAEFER, | ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 14-L-194 |
| ROSCOE TOWNSHIP and FREDERICK NIMMER, | ) ) ) | Honorable |
| | ) | Donna R. Honzel, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices McLaren and Bridges concurred in the judgment.

**ORDER**

¶ 1 *Held*: The trial court did not err in: (1) denying plaintiff's motion for JNOV or a new trial; (2) granting defendants' summary-judgment motion on the issue of alleged vehicle-code violations; (3) ruling on various evidentiary matters; and (4) declining plaintiff's proffered jury instruction concerning defendant's negligence. Affirmed.

¶ 2 Plaintiff, Torry W. Kieckhaefer, sued defendants, Roscoe Township and one of its employees, Frederick Nimmer, for negligence and willful and wanton conduct following an accident that occurred after plaintiff's motorcycle collided with Nimmer's tractor and mower. A jury rendered a verdict in defendants' favor. The trial court subsequently denied plaintiff's motion for judgment notwithstanding the verdict (JNOV) and, alternatively, for a new trial. Plaintiff

appeals, arguing that the trial court erred in: (1) denying his motion seeking JNOV or a new trial; (2) granting defendants' motion for summary judgment on count VI of plaintiff's third amended complaint (and by subsequently upholding this ruling in granting defendants' motion *in limine*) on the issue of the township's failure to properly equip its tractors with safety instruments; (3) ruling on several evidentiary matters; and (4) allowing jury instructions that failed to apprise the jury of all of the negligence alleged against Nimmer. We affirm.

¶ 3                                I. BACKGROUND

¶ 4                                A. The Accident

¶ 5      On June 28, 2013, at 11 a.m., Roscoe Township roads-department employees Nimmer and Ryan Martin left the township to mow ditches on Pleasant Valley Road. Nimmer drove a Ford tractor, and Martin drove a John Deere tractor, both with mowers attached to the rear. Rockton Road is a two-lane east-west road, with one lane of travel in each direction. It forms a T-intersection with Pleasant Valley Road to the north. There is a stop sign for Pleasant Valley Road.

¶ 6      Nimmer and Martin were traveling eastbound on Rockton Road, with Nimmer in front, intending to turn left (north) onto Pleasant Valley Road. Both drove in "road gear," about 15 miles per hour, with the mowers off the ground, in transport mode. Martin stated that the weather was sunny and clear.

¶ 7      At this time, plaintiff also traveled eastbound on Rockton Road (at some distance behind the tractors), driving his Honda motorcycle home to eat lunch on a route he had driven before many times.

¶ 8      Plaintiff's position is that the tractors traveled on the *shoulder* of Rockton Road. As plaintiff's motorcycle approached the tractors: Nimmer's tractor turned left in front of him from the shoulder; plaintiff attempted to avoid the tractor by traveling into the westbound lane of

Rockton Road and then the northbound lane of Pleasant Valley Road; he was vaulted from his motorcycle and was thrown to the shoulder at the northwest corner of the intersection; his cycle fell down and slid, colliding with the side of Nimmer's tractor and stopping at the point of impact in northbound Pleasant Valley Road; Nimmer observed plaintiff fly over and in front of his tractor; Nimmer then drove his tractor in a controlled maneuver to the northeast shoulder of the intersection without making sure it was safe to do so; and Nimmer ran over plaintiff's right leg with the right rear tire and his leg and body with the mower deck of the tractor.

¶ 9    Defendants maintain that the tractors traveled in the *eastbound lane* of Rockton Road. They assert that, as Nimmer slowed to 10 miles per hour and initiated his left turn onto Pleasant Valley Road from the eastbound lane of Rockton Road, plaintiff, who was *passing* (not evading) the tractors, struck Nimmer's tractor with his motorcycle behind the tractor's left front wheel. The collision, according to defendants, occurred in the westbound lane of Rockton Road, left of the center line, within 100 feet of its intersection with Pleasant Valley Road, at a location south and west of the place where the motorcycle was at final rest. The friction and scape marks leading to the cycle's final rest occurred, according to defendants, post-collision as the cycle skidded or was dragged. Plaintiff was ejected from his cycle over the front of Nimmer's tractor, onto the roadway, towards the northeast corner of the intersection. The force of the impact pushed Nimmer's tractor off of its original intended path of travel. As plaintiff lay on the roadway, the right rear tire of Nimmer's tractor ran over plaintiff's leg before Nimmer could stop the tractor. Defendants assert that Martin did not see plaintiff until he passed Martin's tractor in the westbound lane and hit Nimmer's tractor. Nimmer did not see plaintiff at all prior to the collision.

¶ 10    After the collision, plaintiff was transported to Rockford Memorial Hospital, where he was treated by Jimmy Walker, a physician's assistant, in the emergency room. Walker recorded in his

consultant notes that plaintiff "states that the injury occurred after he crashed his motorcycle into a tractor going approximately 65 to 70 miles per hour."

¶ 11    Plaintiff has amnesia about the collision and his treatment at the hospital on the day of the accident.

¶ 12                                    B. Lawsuit

¶ 13    On June 20, 2014, plaintiff filed a three-count complaint against defendants, alleging negligence and vicarious liability in Nimmer's operation of his tractor and willful and wanton conduct on the township's part for its failure to equip the tractors with turn signals and brake lights. In a first amended complaint filed on September 4, 2014, plaintiff reiterated the same allegations.

¶ 14    On October 20, 2016, plaintiff filed a second amended complaint, raising two negligence claims: (1) the collision between the tractor and the motorcycle (count I); and (2) alleging that the tractor drove over plaintiff, who was alleged to be a "pedestrian" on the ground after he was ejected from the motorcycle (count II). Defendants moved to strike count II, alleging that it failed to state a separate cause of action. The trial court granted the motion and allowed plaintiff leave to file an amended complaint.

¶ 15    On May 11, 2017, plaintiff filed a third amended complaint, alleging the two occurrences with separate injuries and damages arising out of each occurrence. He also continued to allege the same willful-and-wanton conduct against the township. On October 10, 2017, defendants moved for summary judgment as to plaintiff's claims concerning the township's failure to equip the tractors with brake lights and turn signals. On December 28, 2017, the trial court granted defendants summary judgment (on count VI, which had alleged that the township was willful and wanton for failing to equip its tractors with brake lights or turn signals as allegedly required by statute), finding that: (1) the tractors were "farm tractors" under the Illinois Vehicle Code (Vehicle

Code) (625 ILCS 5/12-101(b), 208 (West 2018)) and, therefore, did not require brake lights and turn signals; and (2) plaintiff's amnesia and the lack of other evidence as to what plaintiff could see prior to the collision meant that it was "pure conjecture, pure speculation" whether the lack of brake lights or turn signals was a proximate cause of plaintiff's injury. The trial court denied defendant's request for an order under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).

¶ 16 Defendants moved *in limine* to bar evidence of plaintiff's economic damages, because he failed to disclose expert opinion evidence as to which of the two alleged occurrences was the proximate cause of his injuries, medical expenses, and claimed wage loss. The trial court, in comments prior to ruling on the motion, stated that it believed that plaintiff had an indivisible injury and that he would need to amend his complaint in order to offer evidence of his injuries.

¶ 17 On January 26, 2019, plaintiff filed a two-count fourth amended complaint that did *not* contain allegations concerning equipment violations or turn signals or the two-occurrence theory. (This is the version of the complaint upon which trial occurred.)

¶ 18 Defendants moved *in limine* to bar evidence that the township failed to equip the tractors with brake lights and turn signals. They also moved to bar evidence as to any other signals, including hand signals. The trial court granted defendants' motion. At trial, plaintiff did not make an offer of proof as to the tractors' equipment or the use of turn signals, nor did plaintiff offer any jury instructions concerning brake lights, turn signals, or equipment violations. In his post-trial motion, plaintiff did not raise an objection that there was no evidence that the lack of brake lights or turn signals was a proximate cause of the collision.

¶ 19 Plaintiff moved *in limine* to bar evidence of his admission to Walker, the physician's assistant, about his speed. The trial court denied the motion, finding that plaintiff's statement was

admissible as an admission against interest and that there was no evidence other than that he was alert and oriented at the time he made the statement.

¶ 20    On January 9, 2019, plaintiff moved *in limine* to bar Roger Burgmeier, defendant's expert, from offering opinions as to place of impact, that plaintiff failed to keep a proper lookout, followed at an improper distance, drove at a greater-than-reasonable speed, and passed Nimmer's tractor in the westbound lane of Rockton Road. Plaintiff asserted that the testimony was contrary to the testimony of defendants' fact witnesses and unsupported by the physical evidence at the scene. Defendants, pursuant to Illinois Supreme Court Rule 213(f)(3) (eff. Jan. 1, 2018), had disclosed Burgmeier to offer expert accident-reconstruction opinions about safe motorcycle operation, including the approach, following, and passing of other vehicles; that the vehicles collided in the westbound lane of Rockton Road; and that plaintiff was negligent in various respects in his operation of the motorcycle, including operating the motorcycle to the left of the center of Rockton Road, where such operation was prohibited. On March 29, 2019, the trial court denied plaintiff's motion *in limine*, finding that, since plaintiff was not contesting Burgmeier's qualifications, expertise, or ability, his disagreement with Burgmeier's opinions did not make them inadmissible and he was subject to cross-examination.

¶ 21    On June 10, 2019, Burgmeier gave a video evidence deposition, which was subsequently played during trial. He offered opinions that Nimmer was operating his tractor in the eastbound lane of Rockton Road (not on the shoulder, as plaintiff suggested) immediately preceding the accident, just prior to initiating his turn. He also stated that the collision occurred in the westbound (left of center) lane of Rockton Road within 100 feet of its intersection with Pleasant Valley Road while plaintiff was attempting to *pass* the township's tractors and that the cause of the collision was plaintiff's negligence in the operation of his motorcycle.

¶ 22    On October 6, 2017, defendants disclosed Burgmeier as a Rule 213(f)(3) expert accident reconstructionist and advised that he would rely on his examination, observation, and inspection of the township's Ford tractor and an exemplar Honda motorcycle.  Defendants also disclosed that Burgmeier would utilize demonstrative exhibits to assist with his testimony.  Defendants purchased a motorcycle identical to the one plaintiff drove at the time of the accident.  Burgmeier photographed his examination of the motorcycle and the tractor.  The photographs were produced to plaintiff's counsel on November 2, 2017.  (Plaintiff's counsel marked the photographs, including those of the exemplar motorcycle and the tractor, as exhibit 5 at Burgmeier's discovery deposition on November 16, 2017.)  At the time of Burgmeier's discovery deposition, he had not yet determined what demonstrative exhibits he would utilize at trial.

¶ 23    On January 24, 2019, the parties entered into a stipulation (with the language suggested by plaintiff's counsel) concerning the foundation for all photographs produced in discovery, including those of the tractor and exemplar motorcycle.  They stipulated that the photographs: were taken on the date identified; fairly and accurately depicted the scene and objects that appeared in them at the time they were taken; and were relevant to the issues in the case.

¶ 24    At the final pre-trial conference, the trial court ordered the parties to disclose their intended use of demonstrative exhibits enough time in advance of trial for the other party to address any issues with the court.

¶ 25    On April 17, 2019, defense counsel advised plaintiff's counsel that Burgmeier was unable to testify live at trial due to a previously-scheduled vacation.  Counsel suggested June 10, 2019, to proceed with his evidence deposition, which was agreed to.  The following day, defense counsel served plaintiff with notice for the deposition.

¶ 26    On May 6, 2019, defense counsel emailed plaintiff's counsel, advising counsel of defendants' intent to use the tractor and the exemplar Honda Magna 750 motorcycle previously photographed by Burgmeier as demonstrative exhibits. Counsel further advised that they intended to videotape, for use at trial, Burgmeier utilizing and making reference to both vehicles during his examination.

¶ 27    Between May 6, 2019, and the start of the evidence deposition on June 10, 2019, plaintiff did not object to the use of the demonstrative exhibits. However, after Burgmeier was sworn in and the evidence deposition commenced, plaintiff's counsel objected to the use of the vehicles as demonstrative exhibits.

¶ 28    Prior to the commencement of trial, the trial court heard argument on plaintiff's objection. The court reserved decision on the issue to review the video and, ultimately, allowed the demonstrative testimony/exhibits to be presented to the jury. In his post-trial motion, plaintiff did not raise an objection to the use of the Ford tractor and the exemplar Honda motorcycle as demonstrative exhibits.

¶ 29                               C. Trial

¶ 30                          1. Deputy Tim Speer

¶ 31    Trial commenced on June 25, 2019. Winnebago sheriff's deputy Tim Speer, a crime-scene technician, testified that he went to the collision scene on June 28, 2013, at about 12:30 p.m., and photographed the scene and vehicles. Nothing had been moved before he took his photographs. The motorcycle's radiator appeared to be broken. Underneath the motorcycle's front, there was green fluid, which was consistent with radiator fluid or fuel. Speer observed blood at the northeast corner of Pleasant Valley Road, in the gravel, which he learned was where plaintiff was deposited after the crash. He observed no blood on the tractor-mower or on the motorcycle, on Pleasant

Valley Road north or Rockton Road west, or between the motorcycle at rest and the northeast corner of Pleasant Valley Road.

¶ 32    Looking west from the Rockton and Pleasant Valley intersection, Speer did not observe any obstructions of his view.

¶ 33    On cross-examination, Speer testified that there was not sufficient information to develop an opinion on the exact point of impact. The motorcycle left a white skid mark. Speer opined that the general area of impact was to the north (left) of the center line of Rockton Road and within 100 feet of the intersection with Pleasant Valley Road. Speer identified only one tire mark related to the crash, and it traveled in the same direction as the gouge mark left by the motorcycle as it slid. There was no evidence of braking or skidding by the motorcycle ahead of where the accident occurred.

¶ 34    Speer further testified that, given that the motorcycle primarily sustained damage on the front end and given that the tractor sustained damage on the left side of the engine compartment, the motorcycle likely hit the side of the tractor at some angle. "[I]t wasn't a sideswipe. It was more of a T-type collision." This was consistent with the motorcycle being engaged in a *passing* maneuver within 100 feet of the intersection.

¶ 35    There was no glass in the westbound lane of Rockton Road. The debris was to the northeast of the motorcycle. One of the problems with identifying an exact place of impact was that the tractor had been moved after impact. The gouge marks Speer observed could be consistent with avoiding a collision or after impact. A deposit of radiator fluid can be an indicator of place of impact, as can a place where broken glass is found.

¶ 36                              2. Deputy Denise Morris

¶ 37    Winnebago sheriffs' deputy Denise Morris was the first deputy to arrive at the scene at 11:40 a.m.  In her report, she recorded that Nimmer told her that he was driving eastbound on Rockton.  At the intersection with Pleasant Valley Road, he stopped, looked in his rearview mirror, looked over his shoulder and did not see any traffic, and proceeded to make a left-hand turn, at which the motorcycle collided with him.  Nimmer drove the tractor to the northeast side of the roadway and parked it off of the road.  He reported that he observed plaintiff stand up, walk to the northeast side of the road, and collapse.

¶ 38    Morris inspected the tractor's side and observed damage to the front left side.  Nimmer reported that the tractor's hydraulic filter and front-end bracket and tie rod were damaged.

¶ 39    Morris also spoke to Martin, who reported that he drove behind Nimmer.  When they arrived at the intersection with Pleasant Valley Road, he looked in his rearview mirror, did not see any vehicles, and turned around and did not see any vehicles.  He then saw a motorcycle collide with Nimmer.  Martin also told Morris that he believed the motorcycle was "going fast" and that he did not believe the motorcyclist attempted to brake.

¶ 40    Morris further testified that she went over to plaintiff at the scene.  He laid on the ground.  There were bones protruding from his lower right leg, and he had lacerations on his face.  He wore a helmet.

¶ 41    Subsequently, at the hospital, Morris spoke to plaintiff.  She recorded in her report that plaintiff did not recall the accident, but did remember driving home eastbound on Rockton Road just prior to the collision.  His blood draw was negative for both alcohol and drugs.

¶ 42    On cross-examination, Morris testified that her report states that Nimmer and Martin had stopped at the intersection.  (Speer's report, however, states that Morris informed him that the township employees merely slowed at the intersection.)  "When it was described to me by both

Mr. Nimmer and [Martin], they described both looking over their shoulder. That would concern me if they were still driving." There were no tire marks consistent with braking before the impact. Morris concluded that plaintiff operated the motorcycle in the westbound lane at the time of impact and within 100 feet of the intersection with Pleasant Valley Road. She also opined that the motorcycle was engaged in a *passing* maneuver by moving to that lane. Nimmer and Martin told Morris that they were driving on the road itself when the accident occurred. She relied on this information in making her determination that plaintiff was engaged in a passing maneuver. In forming her opinion concerning the location of the accident, Morris relied on Nimmer and Martin's statements, plus her observations of the scene.

¶ 43     Morris further testified that the marks on the road could be consistent with both passing and with attempting to avoid a collision, but, if Nimmer and Martin were on the road and there is only one lane in each direction, then an approaching driver would need to slow down or stop behind them. If a tractor was on the shoulder and turned across the eastbound and then westbound lanes, the turn would be permissible if they first traveled onto the road and then made their turn.

¶ 44     The tractor does not fit on the gravel portion of the road. The shoulder consists of a portion that is gravel and a portion that is grass. The tractor fits on the grass and gravel portion. There was fluid underneath the motorcycle, mostly on Pleasant Valley Road.

¶ 45                                3. Ryan Martin

¶ 46     Ryan Martin testified that he drove a John Deere tractor on the day of the incident. He and Nimmer, who was Martin's supervisor, went to the intersection of Rockton Road (which is marked with intermittent yellow lines) and Pleasant Valley Road to mow ditches. They drove the tractors in a line and, on Rockton Road, between the yellow lines and the white line on the road. The

shoulder on Rockton was not wide enough to travel on. According to Martin, the combination of the gravel and grass portion of the shoulder is *not* sufficient to drive a tractor on.

¶ 47    As he approached Pleasant Valley Road, Martin watched his mirror and looked behind him constantly for at least ½ mile. He used the rearview mirror a couple of times and would glance up. He started checking his rearview mirror a couple of minutes before the collision. The only thing that could obstruct his vision was the roll cage of the tractor (two bars on either side). The road was straight. Martin first noticed plaintiff's motorcycle when it was beside the tractor. The next thing he noticed was that the front of the motorcycle collided with "the front left side behind the front tire of [Nimmer's] tractor." Upon impact, Martin's tractor was 15 feet behind Nimmer's tractor.

¶ 48    When the collision occurred, Martin had not begun his turn. After impact, Nimmer's tractor, which was halfway through its turn, straightened out and went off to the side of Pleasant Valley Road.

¶ 49    After the collision, the motorcycle stayed in the intersection. Plaintiff's body went "up over the front of the tractor and out from underneath." It appeared that the tractor's right rear tire and the mower had run over plaintiff. Martin stated that his tractor traveled at about 10 miles per hour, and he estimated Nimmer's travelled at the same pace.

¶ 50    On cross-examination, Martin testified that he drove in road gear on the day of the incident. When driving in road gear, you do not drive partly on the shoulder and partly on the grass, because you do not know what you could pick up, such as debris people have thrown into the ditch. Also, it is a very rough surface and is difficult to maintain a straight path of travel. He denied that, on the day of the incident, he was partly on the grass as he approached Pleasant Valley Road and yanked the tractor immediately to the left and onto the road.

¶ 51                 4. Township Road Commissioner Matt Servant

¶ 52     Matt Servant, township road commissioner at the time of the incident, testified that, in June 2013, the township had no written rules or guidelines about how employees were to operate tractors when driving on the roads. Nor were there verbal rules that he conveyed to employees concerning how to operate tractors on the road. He is unaware of any rules for employees driving on the road. Servant did not advise employees when driving tractors to ride on the shoulder and make sure that they have proper signage on the back of their tractors. Nimmer, who was assistant road commissioner at the time, advised them so. Servant testified that he left all road issue and duties to Nimmer to handle.

¶ 53                       5. Frederick Nimmer

¶ 54     Plaintiff called Nimmer as an adverse witness. Nimmer worked as assistant road commissioner in 2013. On the day of the incident, he drove a Ford tractor with a five-foot mower at about 15 miles per hour. It was a bright, clear, and sunny day. At the intersection of Rockton and Pleasant Valley, Nimmer did not stop; rather, he slowed to 10 miles per hour to take the turn. Nimmer's and Martin's tractors drove on the road. The shoulder gravel and grass are wide enough to take a tractor and mower, but the pace would be very slow; about five miles per hour instead of 15 miles per hour.

¶ 55     Prior to the collision, Nimmer did not see plaintiff or his motorcycle. About five seconds before making the turn, Nimmer looked in his mirror for about two seconds, turned around and looked, saw nothing, and turned back and made the turn. There was nothing for about 100 feet obstructing his view behind him. Nimmer testified that he first became aware of the motorcycle when it hit him. The front of the motorcycle collided with the rear of the front wheel of the tractor.

It was a T-bone type collision. Plaintiff was seated on his motorcycle when it hit Nimmer's tractor, and the cycle was not skidding.

¶ 56    According to Nimmer, the motorcycle was not dragged by the tractor, but the tractor was pushed by the motorcycle and then straightened out (Nimmer turned at a 45-degree angle). Once he got away from the motorcycle, it stopped. The tractor headed northeast. Plaintiff's body flew over the front end of Nimmer's tractor, and he landed on the road in front of Nimmer. Plaintiff's body came to rest on the shoulder of Pleasant Valley Road, the northeast side shoulder. Before that, he was on the pavement, and Nimmer's tractor ran over plaintiff (with the right rear tire and the mower, which was in the air) after he went over in front of the tractor.

¶ 57    Nimmer does not know how fast the motorcycle was traveling as it approached. After the collision, the tractor was pushed down the road to the northeast shoulder of Pleasant Valley Road, a distance of about 40 feet. Nimmer then parked his tractor, lowered his equipment, "bailed" off the tractor, and called 911. Nimmer does not know how plaintiff's body got from the pavement to the shoulder of Pleasant Valley Road. While plaintiff lay on the shoulder, he flopped around. Nimmer told him to lay still. Plaintiff stated that it hurt. His leg was going in two directions that were not normal.

¶ 58    According to Nimmer, his tractor sustained a bent tie rod, bent front brace, a broken hydraulic filter, and a nick on the frame. He did not observe blood on the tractor. Nimmer did not recall telling Morris that he stopped at the intersection; he recalled telling her he slowed. He denied telling Morris that he proceeded with the left turn and that the collision occurred when his tractor body was fully in the westbound lane of Rockton Road. Nor did he recall telling the deputy that he then pulled the tractor to the northeast side of the road, or that he saw the driver get off the bike, walk to the northeast side, and fall down.

¶ 59    When asked if the motorcycle slid after the collision, Nimmer replied, "He was pushing me. It was under power." The motorcycle stopped after he got away from it, which took two to three seconds. Nimmer did not see plaintiff on the corner of Pleasant Valley Road before he got there with his tractor.

¶ 60    Nimmer testified that he and Martin drove the tractors on the far right of the road, not the shoulder. To let vehicles pass, they would drive half on the road and half on the shoulder. He would not transport a tractor with a mower through the grass because it is rough and "[y]ou don't know what's down there." He explained that road gear is the transport gear and allows the tractor to speed up to 15 to 20 miles per hour. You never mow in road gear.

¶ 61                             6. Plaintiff's Expert Dan Billington

¶ 62    Plaintiff's expert Dan Billington personally examined the collision site on September 9, 2013, September 24, 2014, and August 16, 2016. He took measurements and located landmarks and visible road marks.

¶ 63    Billington testified that the collision occurred in a rural area. Rockton Road crests about 2,200 feet west of the collision site and then has a gradual downhill slope toward Pleasant Valley Road. The road, according to Billington, is fairly flat for a significant portion of the 2,200 feet, and the visibility is clear on Rockton Road for that distance. Pleasant Valley Road is steep. As you turn north from Rockton Road, you travel up a fairly steep grade. Rockton Road is marked with a yellow passing lane, with single-direction traffic each way. The speed limit in the area is 55 miles per hour.

¶ 64    Billington opined that the tractors traveled eastbound on the *shoulder* of Rockton Road. As plaintiff approached the tractors, Nimmer made a left turn near the intersection with Pleasant Valley Road, at which point plaintiff *swerved* to attempt to avoid a collision (he steered hard

toward the northeast, which is not a typical passing pattern), thereby locking up his front wheel and causing the bike to fall. This caused plaintiff to be thrown from the motorcycle, travel up through the air, cross in front of the path of Nimmer's tractor, and onto the pavement on Pleasant Valley Road. The motorcycle, which was on the ground at this point, had slid to the side of the tractor, causing the tractor to move sideways a short distance. The motorcycle then pivoted up, struck the side of the tractor, and fell back down. The tractor drove toward the northeast portion of the intersection, left the paved road, traveled onto the gravel shoulder, and drove over plaintiff.

¶ 65    Scrape marks, about 14½ to 15 feet long, on the road ran in a northeast direction from the intersection to Pleasant Valley Road. There was no debris at the start of the marks, but a large amount of debris at the end of the marks, which indicated that the motorcycle had fallen to its side after plaintiff was thrown from it. (The marks were a braking tire mark or a skidding tire mark.) Billington opined that the marks, along with their angle of travel, indicated that plaintiff had tried to *avoid* the collision.

¶ 66    Billington noted that the police did not indicate that there were any skid marks or braking marks. He disagreed, noting the tire marks and evidence on the motorcycle's rear wheel, specifically, white dots that are powdered particles of road surface. In his opinion, plaintiff was braking at a high degree prior to the collision.

¶ 67    Billington further opined that Nimmer turned from the *shoulder*, not the road, as evidenced by the tire marks. Photographs of the collision site showed tracks (polish marks from the rear wheel of the mower deck bouncing on the gravel shoulder; tire marks from the front wheel, along with dragging marks from chains attached to the mower deck; some tire marks had a tread pattern with the same number of ridges as the front wheels of Nimmer's tractor; and turning marks from

the shoulder to the road) that are unique to Nimmer's tractor-mower on the road *shoulder* prior to the collision. This location explains why plaintiff took action to avoid the left-turning tractor.

¶ 68     He also opined that the mower deck was in the down position when the accident occurred. The appearance of gravel or dust on the tire supported this opinion. Photographs showed that the rear wheel of the tractor's mower deck rolled through pooled blood, suggesting it drove over plaintiff after he arrived at his final position on the shoulder.

¶ 69     Billington rejected the theory that the motorcycle came into the tractor upright, because there was no evidence of significant damage to the front wheel. The motorcycle wheel, he noted, turned to the right, lifted up, the front wheel wedged underneath the tractor, moved up and tripped sideways onto the tractor. The cycle sustained damage on its right side and the crushed saddlebag was pushed down.

¶ 70     The radiator was damaged and cracked, and there was a spray of fluid underneath. Billington further opined that the point of impact was the general area where the motorcycle came to final rest (on Pleasant Valley Road just north of Rockton Road near the center of Pleasant Valley). Plaintiff was thrown to the shoulder in a "high side" event that ejected him from the cycle before impact. In such an event, the cycle stands up and rolls in the direction of the event and throws off the rider. The evidence near the shoulder suggested that plaintiff came to rest on the shoulder of the northeast corner of the intersection where a pool of blood was left. The distance of 44 to 45 feet he was thrown indicates a motorcycle speed of 25 to 27 miles per hour at the time plaintiff was ejected from the motorcycle. (Billington agreed that, prior to being ejected from the cycle, plaintiff could have been traveling 65 to 70 miles per hour, which would be evidence of him failing to exercise due care, and then slowed down.) After he was ejected, the cycle traveled on its side and collided with the tractor. The rear wheel of the tractor's mower deck rolled through

pooled blood, suggesting it drove over plaintiff after he arrived at his position of final rest on the shoulder.

¶ 71    Billington opined that Nimmer did not operate his tractor in a safe manner.  He made a left turn into the path of an approaching motorcycle and that, plus his failure to maintain a lookout, was the proximate cause of the collision.  If Nimmer had looked over his shoulder or in the rearview mirror, he would have seen approaching traffic prior to making the left turn.  There were no obstructions to his view.

¶ 72                      7. Defendant's Expert Roger Burgmeier

¶ 73    The jury viewed the videotaped evidence deposition of Roger Burgmeier, defendant's forensic accident reconstructionist.  Burgmeier reviewed documents in this case and visited the site more than once.  He also inspected Nimmer's tractor and an exemplar Honda motorcycle of the same model as plaintiff's motorcycle.

¶ 74    Burgmeier opined that the collision took place in the westbound lane of Rockton Road at a location south and west of the motorcycle's final resting place.  He also opined that plaintiff did not have time to attempt to evade the tractor, because of the speed of the vehicles involved.  Also, because the accident occurred in the westbound lane and because plaintiff did not have time to evade the tractors, he had to have been *passing* the tractors that were traveling in the eastbound lane. The friction and gouge marks leading to the cycle's final resting spot occurred post-collision as the cycle skidded or was dragged.  Plaintiff was on the motorcycle at the time of collision.

¶ 75    He further testified that the gouge marks on the pavement were caused by the motorcycle when it fell on its left side.  The left-side exhaust pipe lines up with the scrape marks, which show the cycle's path.  He disagreed with Billington's opinion that the cycle was on its side when it struck the tractor.  Burgmeier explained that there was no evidence of this.  The tractor's left tire-

steering rods (there are two) were bent. This shows the point of impact. There was no damage to the underside of the tractor. If the cycle was on its side, there would have been damage to the underside of the tractor. Also, the left fork tube has scuffing, which reflects a rubber contact transfer from the left front tractor tire; it is not pavement contact. This could only have occurred if the motorcycle was upright. The right-side exhaust pipes on the cycle are bent and broken, which occurred during the accident when it made contact with the left rear tire of the tractor.

¶ 76    Further, Burgmeier opined that the yellow paint on the cycle's *left and right* fork tubes and on the front tire are from the tractor. If it had made impact while on its side, it would have been impossible to have yellow paint transfer from the tractor on *both* sides of the cycle. The cycle impacted the tractor between the tractor's left front tire and the left tire steering rods. (This is an area that is somewhat triangular in shape.) That is, the motorcycle's left fork tube had yellow paint marks and a dent that it could only have gotten if it struck the tractor while upright. If it had struck it while on its left side (as Billington opined), the left side would not have any such paint marks. The motorcycle was upright when it collided with the tractor and had not been down on the pavement prior to collision. "I mean, this damage, it's coming into a yellow-painted structure, and that's why ultimately the fender is broken; but yes, the bike is upright, and those lines show it coming into the object it struck."

¶ 77    Burgmeier further testified that the damaged cycle measured about one foot shorter than its original length, which reflected compression after it made contact with the tractor. (There was also damage to the fuel tank, and the seat was compressed.) The compression would not have occurred if the cycle had made contact with the tractor while on its side. Also, part of the front fender broke off when the cycle went under the wheel arm.

¶ 78    Burgmeier testified that the Nimmer's tractor was in the eastbound lane immediately preceding the collision.  If it had come off the shoulder, plaintiff would have ended up in the eastbound lane.  The impact occurred, the motorcycle rotated, it separated away from the tractor, overturned to its left side, and slid into its final resting position in the northeast corner of the intersection.  Burgmeier further testified (consistent with Speer and Morris, but contrary to Billington) that there was no evidence of skid marks indicating emergency or high-level braking by plaintiff.  When the motorcycle and tractor collided, plaintiff ejected and traveled in the same direction that the motorcycle was traveling at that point, which placed him, in Burgmeier's opinion, at the northeast corner of the intersection.  If the tractor had made a sudden left turn or 90-degree turn, "it would have been impossible to have that left front damage on the tractor.  The rider—if the rider didn't collide with the operator of the tractor as he's ejected, you would certainly see evidence of contact damage kind of midway at that tractor, [of] which there's none."

¶ 79    Plaintiff, according to Burgmeier, was driving in the westbound lane within 100 feet of the intersection, attempting to execute a *passing* maneuver.  He opined that plaintiff was not in the westbound lane to avoid an accident, because there was no time to react and make a lateral movement.  Plaintiff was trying to execute a passing maneuver within 100 feet of the intersection, which would be in violation of the Vehicle Code.  A reasonably-careful motorcycle rider would not have attempted to pass within 100 feet of the intersection. The proximate cause of the accident, Burgmeier opined, was that plaintiff was attempting to pass while approaching an intersection.  "[I]t could not have been in response to the movement of the tractor because that window of time was so short, that he wouldn't have had time to perceive and identify the movement of the tractor and then move his motorcycle laterally."  In Burgmeier's opinion, plaintiff failed to keep a proper

lookout, followed at an improper distance, and drove at a greater-than-reasonable speed as he approached.

¶ 80    Addressing plaintiff's statement at his deposition that his custom and practice was to follow six to seven seconds behind a vehicle in front of him, Burgmeier testified that did not occur in this case. If plaintiff traveled 50 miles per hour, he would travel about 73 feet per second. Six to seven seconds would equal nearly 500 feet, or 1½ football fields in length. The tractor would have completed its turn before plaintiff reached the intersection.

¶ 81    Burgmeier testified that there was no evidence that plaintiff was traveling faster than the speed limit. Indeed, he did not determine the speed of the motorcycle. Operating a motorcycle left of center is appropriate in order to try to avoid a collision. He also testified that the radiator did not rupture, and the presence of pooled liquid debris is an indicator of where something comes to rest and sits for a while.

¶ 82                    8. Physician's Assistant Jimmy Walker

¶ 83    Jimmy Walker, the physician's assistant who treated plaintiff at Rockford Memorial Hospital, testified that his notes showed that plaintiff, age 27, presented with an injury to the right lower extremity. "The patient states that the injury occurred after he crashed his motorcycle into a tractor going approximately 65 to 70 miles per hour." Walker also wrote that plaintiff was "alert and oriented, well dressed, well nourished, well hydrated." Further, plaintiff, according to Walker, was alert and oriented times three to person, place, and time. He explained that alert and oriented means that the patient was able to state the place and time of where he was during the exam and his person. Walker testified that there was no documentation in his notes that suggested that plaintiff was incoherent, babbling, unable to understand his questions, or failed to appropriately respond.

¶ 84    On cross-examination, Walker testified that he saw plaintiff around 2:02 p.m. Plaintiff denied that he had neck pain, dizziness, shortness of breath, chest pain, abdominal pain, or headaches and blurred vision. He did state that his pain was a 10 out of 10 and that any movement aggravated the symptoms. His wound—open Grade 2-B proximal tibia and fibula shaft fracture—was open to the bone. Plaintiff also sustained facial and wrist lacerations and chest and shoulder abrasions.

¶ 85    Notes also recorded that 1 milligram of Dilaudid (hydromorphone), a narcotic used to relieve pain, was administered at 1:32 and 1:35 p.m. and that an unrecorded amount was administered at 1:05 p.m. When asked how patients react cognitively to Dilaudid, Walker testified that it depends on the patient. Whether or not a patient experiences confusion depends on the patient and the type of injury they are suffering. When asked if a patient has a severe injury and has three doses of Dilaudid, can it cause confusion, Walker replied, "No." Under those circumstances, it may mildly abate their pain, depending on how much trauma was involved.

¶ 86    A consultation note signed by Dr. Brian Bear, an orthopedic surgeon, stated that plaintiff reported to the physician that "he was a helmeted driver of a motorcycle and hit another vehicle." Dr. Bear's notes also stated that he diagnosed plaintiff with a concussion. Walker testified that it is not uncommon for patients to give two different stories. He replied in the negative when asked if the difference could be accounted for by the fact that plaintiff had been administered three doses of Dilaudid.

¶ 87                                    9. Dr. Brian Bear

¶ 88    Dr. Brian Bear, a board-certified orthopedic surgeon, also attended to plaintiff at the hospital and testified, via videotaped evidence deposition, as plaintiff's rebuttal witness. Dr. Bear supervised Walker. Dr. Zarnke, the emergency-room doctor, was the first doctor to examine

plaintiff. He prescribed Dilaudid and morphine to be given every 20 minutes. The drug was administered intravenously at 1:05, 1:32, and 1:35 p.m. When asked the effects of Dilaudid, Dr. Bear replied that he is not a pharmacist, and a pharmacist should be consulted. However, he also testified that it decreases pain and it may affect cognitive function and coordination.

¶ 89    Dr. Bear is unaware if Walker saw plaintiff before or after he did. Dr. Bear did not treat plaintiff's head injury; only his extremity injury. A treatment note prepared at 5:58 p.m. and filed at 6:31 p.m. stated that plaintiff reported that his pain was a 5 out of 10 and that any movement aggravated it. Dr. Bear agreed that there was nothing in his notes that contradicted Walker's notes that plaintiff was alert and oriented.

¶ 90                                    D. Jury Instructions

¶ 91    At the jury instruction conference, the parties each proffered a proposed Illinois Pattern Jury Instruction, Civil, No. 20.01 (approved Dec. 8, 2011) (hereinafter IPI 20.01) with suggested language for Nimmer's alleged negligence. Plaintiff's proposed instruction contained four sub-parts: (1) failing to keep a proper lookout for other vehicles; (2) failing to exercise due care when making a turn; (3) turning left from the shoulder of the road; and (4) failing to exercise due care by driving his tractor toward a location where he knew or should have known there was a high risk of striking a person. Defendants' proposed instruction contained two sub-parts: (1) failing to keep a proper lookout for other vehicles when turning from the shoulder of the road; and (2) turning left from the shoulder of the road.

¶ 92    The trial court determined that the only evidence plaintiff presented of Nimmer's negligence was that Nimmer improperly turned left from the shoulder of the road and failed to keep a proper lookout for other vehicles when doing so. It accepted defendants' proposed instruction, which was subsequently read to the jury. In his post-trial motion, plaintiff raised only

the court's refusal to include sub-part (d) of his proffered instruction. The trial court, denying the claim of error, determined that plaintiff failed to provide a record from which it could assess the discussions at the jury-instruction conference, whether there was any evidence offered to support the giving of a different instruction, and the actual instruction given to the jury.

¶ 93                           E. Verdict and Subsequent Proceedings

¶ 94     After deliberating for less than one hour, the jury found in defendants' favor. Plaintiff filed a post-trial motion, which the trial court denied. Plaintiff appeals.

¶ 95                                    II. ANALYSIS

¶ 96                                  A. JNOV or New Trial

¶ 97     Plaintiff argues first that the trial court erred in denying his motion for a JNOV, where the evidence so overwhelmingly favored him. Alternatively, he argues that the trial court erred in denying his motion seeking a new trial, where the verdict was against the manifest weight of the evidence. Plaintiff focuses on whether Nimmer made his turn from the shoulder and whether he failed to keep a proper lookout.

¶ 98     A JNOV is properly granted where "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967). "In ruling on a motion for a [JNOV], a court does not weigh the evidence, nor is it concerned with the credibility of the witnesses; rather it may only consider the evidence, and any inferences therefrom, in the light most favorable to the party resisting the motion. Most importantly, a [JNOV] may not be granted merely because a verdict is against the manifest weight of the evidence." (Internal citations omitted.) *Maple v. Gustafson*, 151 Ill. 2d 445, 453 (1992). "The court has no right to enter a [JNOV] if there is any evidence, together with reasonable inferences to be drawn therefrom,

- 24 -

demonstrating a substantial factual dispute, or where the assessment of credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome." *Id.* at 512. We review *de novo* the trial court's decision denying a party's motion for JNOV. *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 178 (2006).

¶ 99    "On a motion for a new trial[,] a court will weigh the evidence and set aside the verdict and order a new trial if the verdict is contrary to the manifest weight of the evidence." *Id.* (quoting *Mizowek v. De Franco*, 64 Ill. 2d 303, 310 (1976)). A verdict is against the manifest weight of the evidence where the jury's findings are unreasonable. *Id.* "A court's ruling on a motion for a new trial will not be reversed except in those instances where it is affirmatively shown that it clearly abused its discretion." *Maple*, 151 Ill. 2d at 455. A court abuses its discretion where no reasonable person would take the view adopted by the court. *Taylor v. County of Cook*, 2011 IL App (1st) 093085, ¶ 23.

¶ 100                    1. Whether Nimmer Made his Turn from the Shoulder

¶ 101   Plaintiff notes that the jury instructions set forth two alleged acts of negligence by Nimmer, both of which, in his view, were supported by overwhelming evidence: (1) that Nimmer turned left from the shoulder; and (2) he failed to keep a proper lookout for other vehicles while turning left from the shoulder.

¶ 102   As to the first act, plaintiff contends that the evidence clearly showed that the tractors were traveling on the *shoulder* of the road when Nimmer made his negligent turn. Acknowledging that his amnesia left defendants' eyewitness testimony unchallenged, plaintiff argues that any reasonable weighing of Nimmer's and Martin's testimony that the tractors were on the roadway should have been disregarded by the jury, because they were demonstrably not credible on the

facts related to liability in this case and their testimony as to where the tractors were traveling is contrary to the objective facts.

¶ 103   Plaintiff also takes issue with Burgmeier's testimony, noting that: he testified that the collision took place in the westbound lane of Rockton Road south and west of the motorcycle's final place of rest; plaintiff did not have time to attempt to evade due to the speed of the vehicles involved; since the accident occurred in the westbound lane and plaintiff did not have time to evade, he had to have been *passing* tractors that were traveling in the eastbound lane; plaintiff was on the motorcycle at the time of collision; and the friction and scrape marks leading to the cycle's final resting place occurred post-collision as the cycle skidded or was dragged.  Plaintiff also notes that Burgmeier testified that there was no evidence of speed faster than the posted limit and that operating a motor vehicle left of center to *avoid* a collision is appropriate.

¶ 104   Plaintiff argues that Burgmeier's theory is dependent on the collision location being the westbound lane.  He also opined that the damage to the motorcycle occurred at the time of collision and that the radiator did not rupture; thus, there was no fluid dump in the westbound lane south and west of the cycle's final resting place where he opined the impact occurred.  This testimony, according to plaintiff, conflicts with the photographs showing that the radiator did rupture, that there was radiator fluid on the left side of the cycle and the ground at the cycle's final resting place, that the final resting place was not the westbound lane, but on northbound Pleasant Valley Road, and Nimmer's and Martin's testimony that the cycle was not dragged after the collision and stayed at the collision location.

¶ 105   Plaintiff argues that the cycle's path logically indicated an attempt to *evade*, which undermined Burgmeier's theory of how the accident occurred, in that his opinion on vehicle speed was clearly wrong.  Also, he contends that plaintiff could not have remained mounted on the cycle

as it skidded across the ground for 14 feet and still been thrown up and over the tractor when the cycle hit. Thus, in his view, Burgmeier's statement that plaintiff was on the cycle at the time of impact was also wrong. Plaintiff also notes that Nimmer and Martin testified that plaintiff's body went over and in front of the tractor at or before the impact between the tractor and cycle, not into the tractor's side as physics would dictate based on Burgmeier's own testimony. Also, deputy Speer testified (and the photographs from the scene showed) that there was no blood on the tractor or west and south of the cycle's final rest or between the cycle at rest and the road shoulder. These facts, plaintiff urges, conflict with Burgmeier's opinions, which cannot be taken as evidence in the case.

¶ 106   Plaintiff further asserts that, in the absence of Burgmeier's unfounded opinions, the only remaining evidence that supports defendants' position that the tractors were proceeding east on Rockton Road in the eastbound lane when Nimmer made his left turn was Nimmer's and Martin's testimony. Plaintiff asserts that Nimmer and Martin lied to law enforcement at the scene as to how the accident occurred in a coordinated effort to shield Nimmer from liability. Both told deputy Morris that they were traveling eastbound, stopped at the intersection, looked in their mirrors, looked behind them, saw no vehicles, and, as Nimmer began his turn, his tractor was struck in the westbound lane. Afterwards, according to Nimmer, plaintiff got up and walked to the northeast corner of the intersection, where he fell down. At trial, plaintiff notes, they told different lies. Both testified that there was no stop at the intersection and that, instead of walking to the northeast corner, plaintiff was thrown there. Also at trial, Nimmer, according to plaintiff, made two new false claims: (1) his mower deck was up, and he lowered it after parking on the shoulder; photographs contradicted this, showing the rear mower deck wheel left a trail through plaintiff's blood on the northeast shoulder that would not have been possible if the deck was raised; and (2)

the cycle kept revving after it struck the side of his tractor, pushing it to the northeast shoulder of the intersection; plaintiff, however, testified that his cycle was equipped with a kill switch that would shut off the engine if the cycle was laid down.

¶ 107 Plaintiff concludes that the only credible testimony as to what occurred prior to the collision was that of his own expert Billington, who opined that plaintiff was ejected and the cycle went down and slid 14 feet to the side of the tractor before kicking up due to the impact of its front fork with the spinning front tire of the tractor. He also opined that, after it went down on its side, the engine would have shut off due to the kill switch. Plaintiff maintains that the photographs, as interpreted by Billington, contradicted Nimmer's and Martin's statements. They showed tracks on the road shoulder that were unique to Nimmer's vehicle. They included drag marks from the chains on his mower deck and exited the shoulder in direct alignment with the impact area. Plaintiff also notes that Nimmer's and Martin's testimony were contradicted by the location of the impact point in the northbound lane of Pleasant Valley, which was the cycle's final resting spot and the area where debris and fluids from the cycle were present, which, in plaintiff's view, discredited the defense theory that the cycle was engaged in a passing maneuver. He also points to the speed of the tractor that allowed plaintiff to react to it and was, therefore, inconsistent with the 10 miles per hour Nimmer testified to and, instead, consistent with 5 miles per hour they would have used while traveling on the shoulder.

¶ 108 We reject plaintiff's arguments that the evidence clearly showed that Nimmer made his turn from the shoulder. The jury's credibility assessments and resolution of conflicting evidence were central to the case, thereby precluding a JNOV in plaintiff's favor. Also, we conclude that the trial court's denying of a new trial was not unreasonable, where the evidence showed that the jury's verdict was not itself unreasonable.

¶ 109   Contrary to plaintiff's assertion, defense expert Burgmeier's opinions were not unfounded. He supported his opinions that the collision took place in the westbound land of Rockton Road and that the tractors were traveling in the eastbound lane of that roadway with the physical evidence on the tractor and motorcycle, which were, in our view, reasonably interpreted as highly damaging to plaintiff's case. He explained that plaintiff was attempting to pass the tractors while traveling in the westbound lane and there would not have been time for him to attempt an avoidance maneuver, as Billington had opined. Also, he noted (consistent with Speer's and Morris's testimony) that there was no evidence of skid marks showing emergency or high-level braking to avoid a collision.

¶ 110   Burgmeier also opined that Nimmer's tractor was in the eastbound lane immediately prior to the collision, basing his opinion on the fact that plaintiff did not end up in the eastbound lane. He also noted that, if the tractor had made a sudden left turn from the shoulder, it would not have sustained the damage it did to its left front area and, instead, there would have been damage midway along the tractor, which was not present on the vehicle.

¶ 111   The paint marks on the motorcycle, consisting of yellow paint from the tractor, were present, as Burgmeier noted, on both sides of the vehicle, reasonably showing that the cycle could not have made impact with the tractor while on its left side. He also testified to the cycle's impacting the front left area of the tractor, between the front left tire and the left steering rods, which themselves were bent from the impact. Burgmeier also noted that there was no damage to the underside of the tractor, which would have occurred if the cycle had made impact while on its side. Also supporting his position that the cycle was upright was the fact that the left fork tube had scuffing, which indicated rubber contact transfer from the left front tractor tire, not pavement

contact. The motorcycle's compression also supported his theory that the cycle hit the tractor while upright, as it measured about one foot shorter after impact.

¶ 112 We acknowledge that there were problematic aspects of Burgmeier's testimony, but conclude that they were minor. Most notably, Burgmeier testified that the radiator did not rupture. However, photographs from the scene showed a fluid under the radiator, and Speer testified that the radiator appeared to be broken and that the fluid could have been radiator fluid or fuel. Billington concurred that the radiator ruptured.

¶ 113 We reject plaintiff's argument that Nimmer and Martin were incredible and that their testimony should not have been given any weight. We cannot conclude that, in total, the testimony was inherently unreasonable or inconsistent with key evidence. It was for the jury to resolve whether Nimmer turned from the shoulder. Nimmer and Martin denied driving on the shoulder, and Burgmeier agreed. Billington supported his theory that the tractors drove on the shoulder by pointing to photographs of the road shoulder that, he opined, showed drag marks from chains on Nimmer's mower deck. Based on our view of the photographs, we believe that a reasonable jury could find that this testimony was not as conclusive as plaintiff suggests. Also undermining Billington's opinions was his failure to account for the presence of yellow paint from the tractor on both sides of the motorcycle. This undercut his theory that the bike was on its side when it impacted Nimmer's tractor.

¶ 114            2. Whether Nimmer Failed to Keep a Proper Lookout

¶ 115 Next, plaintiff argues that the evidence concerning a proper lookout, which consisted primarily of Nimmer's and Martin's testimony, was clear, uncontroverted, and not favorable to defendants. He points to his expert's, Billington's, testimony that Nimmer's and Martin's statements that they repeatedly checked behind them as they approached Pleasant Valley Road

was not consistent with the evidence. Billington opined that the motorcycle was in plain view from the time it approached the intersection and that the view was unobstructed for 2200 feet. He also testified that the cycle was traveling at 25 to 27 miles per hour at the time plaintiff was ejected from it; thus, the evidence does not support a finding of excessive speed. Plaintiff maintains that a driver cannot say he looked behind him repeatedly and did not see an approaching vehicle while traveling on an unobstructed roadway on a clear, sunny day without having been negligent. Nimmer, in plaintiff's view, had a duty to use reasonable care in driving his tractor. A reasonable person does not look and not see under these circumstances.

¶ 116   We reject plaintiff's argument. As noted, it was for the jury to resolve any conflicts in the evidence. It clearly found Burgmeier's opinions more convincing than Billington's and could have reasonably determined, we believe, that Nimmer did not fail to keep a proper lookout. The jury rejected Billington's theory that Nimmer turned from the shoulder. Having found that he turned from the eastbound lane of Rockton Road, the jury could also have found, based on Walker's testimony that plaintiff admitted to traveling 10 to 15 miles over the posted speed limit, that Nimmer did not see plaintiff when he turned prior to making his turn.

¶ 117   In any event, we further note, as defendants suggest, that the jury could have found in defendants' favor if either the preponderance of the evidence did *not* demonstrate negligence on Nimmer's part, *or* if plaintiff's contributory negligence exceeded 50%. Thus, even if the jury believed that Nimmer was negligent (*e.g.*, drove his tractor on the road shoulder and failed to keep a proper lookout), defendants could still have prevailed if the jury also determined that plaintiff's actions (*i.e.*, failing to decrease his speed to avoid a collision, operating his cycle at a speed greater than was reasonable, failing to maintain a proper lookout for the tractors, and failing to move his motorcycle from a course of travel to avoid a collision with the tractor) exceeded 50% of the

proximate cause of his injury. We conclude that the evidence reasonably showed such evidence of plaintiff's negligence. This evidence most notably consisted of Walker's testimony concerning plaintiff's admission that he was traveling between 65 and 70 miles per hour, which was 10 to 15 miles above the speed limit. In addition, Martin testified that plaintiff was "going fast." Indeed, Speer, Morris, and Burgmeier testified that there was no evidence on the roadway of high level braking by plaintiff. This supported Burgmeier's opinion that plaintiff was engaged in a passing maneuver, not attempting an evasive one (*i.e.*, he failed to decrease his speed).

¶ 118  In summary, the trial court did not err in denying plaintiff's motion for JNOV or for a new trial.

¶ 119                    B. Summary Judgment - Equipment & Turn-Signal Violations

¶ 120  Plaintiff argues next that the trial court erred in granting defendants summary judgment on count VI of his third amended complaint, which alleged that the township was willful and wanton for failing to equip its tractors with brake lights or turn signals as required by section 12-208 of the Vehicle Code. The trial court found that the tractors were exempt under section 12-101(b) of the Vehicle Code, which exempts farm tractors, because the township's tractors were farm tractors under section 1-120 of the Vehicle Code, where they were used as mowing machines. 625 ILCS 5/1-120 (West 2018) (defining a farm tractor as "[e]very motor vehicle designed and used primarily as a farm implement for drawing wagons, plows, mowing machines and other implements of husbandry, and every implement of husbandry which is self propelled, excluding all-terrain vehicles and off-highway motorcycles as defined in this Code."). However, the trial court also determined that there was no evidence that a lack of brake lights or turn signals was a proximate cause of plaintiff's injuries, where plaintiff had amnesia about the collision and there was no other evidence concerning what he saw or should have seen. Later, the trial court barred

any mention of the brake lights or turn signals when it granted defendants' motion *in limine*. It also denied plaintiff's request for relief in his post-trial motion. Here, plaintiff maintains that the rulings were erroneous, because the tractors were not farm tractors under the Vehicle Code.

¶ 121    The purpose of summary judgment is not to try a question of fact but, rather, to determine whether a genuine issue of material fact exists. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). Summary judgment is appropriate only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. A genuine issue of material fact precluding summary judgment exists where the material facts are disputed or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts. Summary judgment is a drastic means of disposing of litigation and, therefore, should be granted only where the right of the moving party is clear and free from doubt. *Adames v. Sheahan*, 233 Ill. 2d 276, 295-96 (2009). If the plaintiff fails to establish any element of the cause of action, summary judgment for the defendant is appropriate. *Williams*, 228 Ill. 2d at 417. We review *de novo* a ruling on a summary-judgment motion. *Id.*

¶ 122    "A motion *in limine* permits a party to obtain an order excluding inadmissible evidence and prohibiting comment concerning such evidence during closing argument. The moving party will thereby be protected from any prejudicial impact from the comment and the making of objections in front of the jury. However, a court is disadvantaged in ruling on a motion *in limine* because it is considered in a vacuum, before the presentation of the full evidence at trial that may

justify admission or require exclusion." *Compton v. Ubilluz*, 353 Ill. App. 3d 863, 871 (2004). Motions *in limine* are addressed to the trial court's inherent power to admit or exclude evidence; generally, a reviewing court will not disturb the trial court's ruling on motions *in limine* absent an abuse of discretion. *Beehn v. Eppard*, 321 Ill. App. 3d 677, 680-81 (2001).

¶ 123  Defendants argue that plaintiff forfeited his objections to any claimed equipment or turn-signal violations.  They contend that plaintiff did not re-plead his allegations in his fourth amended complaint.  Defendants note that the trial court granted defendants summary judgment as to this issue as alleged in plaintiff's third amended complaint, but denied defendants' request to make its order final and appealable at that time.  Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016).  Plaintiff's fourth amended complaint, defendants note, omitted his prior allegations concerning turn signals and equipment violations.  Defendants contend that plaintiff had three options to preserve the issues for our review: (1) stand on the dismissed counts, voluntarily dismiss any remaining counts, and appeal; (2) file an amended pleading that re-alleged, incorporated by reference, or referred to the dismissed counts; or (3) perfect an appeal from the dismissal order prior to filing an amended pleading that did not refer to or adopt the dismissed counts.  *Gaylor v. Campion, Curran, Rausch, Gummerson & Dunlop, P.C.*, 2012 IL App (2d) 110718, ¶ 36.  Defendants note that plaintiff failed to utilize *any* of the foregoing methods.  His fourth amended complaint effectively abandoned and withdrew the dismissed claims by not referencing or incorporating them as pleaded in the third amended complaint.  Thus, defendants argue, plaintiff's objection in his post-trial motion for a new trial is not sufficient to preserve the issue for appeal and he has forfeited any challenge to the trial court's summary-judgment ruling concerning the equipment and turn-signal claims.  Additionally, defendants argue that plaintiff forfeited his objection regarding the equipment and turn-signal violations where he failed to make an offer of proof at trial to preserve the claim of

error. Finally, defendants contend that plaintiff forfeited his right to appeal the exclusion of the equipment and turn-signal evidence by failing to raise an objection that there was no evidence that any alleged statutory violation was a proximate cause of the collision.

¶ 124   Plaintiff replies that defendants failed to argue below in response to plaintiff's post-trial motion that plaintiff forfeited his argument by failing to re-allege his argument in his fourth amended complaint.  Next, as to the offer of proof, plaintiff contends that he attempted to question Martin about his use of a signal, but defense counsel objected and the trial court sustained the objection.  He notes that he is not merely appealing the ruling on the motion *in limine*, but also appealing the partial summary-judgment ruling.  Had summary judgment not been granted, the testimony barred by the motion *in limine* would be relevant to plaintiff's claim and allowed into evidence.  He contends that the decision on the summary-judgment issue necessarily decides the evidentiary issue as well and defendants' argument is moot.

¶ 125   Finally, plaintiff acknowledges that his opening brief failed to address the proximate-cause issue and he apologizes to the court for the omission and notes that he argued the issue below, including in his response to defendants' motion for partial summary judgment, his reply in support of his amended post-trial motion, and during hearing on his post-trial motion.  On the proximate-cause issue, plaintiff maintains that the trial court erred in granting summary judgment, where material factual issues existed as to whether plaintiff could see the tractor as he approached and, therefore, been warned of an impending turn by brake lights or turn signals.  He argues that there was significant evidence that he saw the tractors before the collision, whether he was avoiding or passing the tractors.  Had Nimmer braked and signaled before reaching the intersection, the logical conclusion is that plaintiff would have seen it and stopped.  Plaintiff also contends that a reasonable

person could infer that his injury was caused by the lack of safety equipment on the turning vehicle. Thus, material factual issues precluded summary judgment as to the alleged safety violations.

¶ 126    We conclude that plaintiff's argument concerning the equipment and turn-signal violations is clearly forfeited.  Plaintiff failed to re-plead or refer to that count in his fourth amended complaint.  Thus, he abandoned the count.  See *Bowman v. County of Lake*, 29 Ill. 2d 268, 272 (1963) ("Where an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn."); see also *Gaylor*, 2012 IL App (2d) 110718, ¶ 37 ("where a party has failed to employ one of the above methods for avoiding waiver, 'ongoing objections' to a dismissal order will not be sufficient to preserve the issue for appeal.  [Citations.]  This is true even where a party raises objections to a dismissal order in a motion to reconsider, in a motion for a new trial, or in motions *in limine*.")  Plaintiff's argument that defendants are precluded from arguing forfeiture because they did not raise it during argument on plaintiff's post-trial motion is not well-taken.  The question here is whether plaintiff properly preserved the issue for our review.  He did not do so.

¶ 127    Additionally, we agree with defendants that plaintiff forfeited his objection, where he failed to make an offer or proof at trial with respect to the alleged equipment and turn-signal violations. See, *e.g.*, *Simmons v. Garces*, 198 Ill. 2d 541, 569 (2002) (when a motion *in limine* is denied, a contemporaneous objection to the evidence at the time it is offered at trial is required to preserve the issue for review).

¶ 128    Finally, even if plaintiff has not forfeited the issue of the alleged equipment and turn-signal violations, we conclude that the trial court did not err in finding that there was no evidence that the alleged equipment violations were the proximate cause of plaintiff's injury and that the court

properly excluded any such evidence at trial. The court correctly determined that there was no material factual issue supporting the argument that the alleged violations caused the accident. As the court noted, plaintiff has amnesia about the collision and there was no other evidence that he could have or should have seen any brake lights or signals on the tractors prior to the collision. In the absence of evidence, there could not have been a triable issue on the matter. *Williams*, 228 Ill. 2d at 417 (the purpose of summary judgment is not to try an issue of fact but to determine whether a genuine issue of material fact exists).

¶ 129                                   C. Evidentiary Rulings

¶ 130   Next, plaintiff argues that there were three instances where the trial court erred in determining what evidence could be presented at trial and that these errors warrant reversal. Evidentiary rulings are reviewed for an abuse of the trial court's discretion. *Matthews v. Aganad*, 394 Ill. App. 3d 591, 597 (2009).

¶ 131                                     1. Rate of Travel

¶ 132   First, plaintiff takes issue with the trial court's allowance of evidence concerning plaintiff's rate of travel. Prior to trial, plaintiff filed a motion *in limine* seeking to bar Walker's, the physician's assistant's, testimony concerning statements plaintiff made to him (and which Walker memorialized in his notes) that he was traveling at 65 to 70 miles per hour at the time of the collision. The trial court denied plaintiff's motion, finding that plaintiff's statement was admissible as an admission against interest and that there was no evidence other than that he was alert and oriented at the time he made the statement. Here, plaintiff contends that the statements should not have been admitted, because: (1) their prejudicial effect greatly exceeds their probative value; (2) they are inherently unreliable and should not have been allowed as an exception to hearsay; (3) they were contradicted by both plaintiff's and defendants' expert witnesses and

unsupported by the facts; (4) there was insufficient evidence that the plaintiff had knowledge of the facts alleged in the statements; and (5) the plaintiff lacked capacity to make the statements.

¶ 133   Defendants initially respond that plaintiff forfeited any objections to the evidence of his admission about his speed that he did not raise in his post-trial motion.  They note that the sole basis for plaintiff's objection in his post-trial motion was that he had been administered Dilaudid, which he claims rendered his admission inherently unreliable.  Defendants argue that the three additional bases raised on appeal, which were not raised in the post-trial motion, are forfeited due to plaintiff's failure to raise them in the motion.  We disagree that the failure to raise these specific objections renders the issue forfeited.

¶ 134   As to plaintiff's first claim—that the statements' prejudicial effect greatly exceeds their probative value—he asserts that their probative value was minimal due to the circumstances under which they were given, namely, in an emergency room after he suffered a severe and disabling injury to his leg, was repeatedly administered Dilaudid and morphine (at 1:05 p.m., 1:32 p.m., and 1:35 p.m.) for the pain, was suffering pain described as 10 out of 10, and was diagnosed by Dr. Zarnke later that afternoon as suffering from a concussion.

¶ 135   Plaintiff further argues that the statements were to all appearances false, because they were contradicted by plaintiff's and defendants' reconstruction experts and not supported by any factual evidence at the scene.  He notes that Burgmeier opined that he had no evidence that the rider was going greater than the speed limit.  Billington, plaintiff's reconstruction expert, calculated that the rider throw showed a speed of 25 to 27 miles per hour.  Plaintiff himself had amnesia and could not testify as to his speed.  Plaintiff also argues that the statements' prejudicial effect was great, as they would be considered an act of comparative negligence, which is inherently damaging.

¶ 136   We reject plaintiff's argument.  Walker's testimony detailed plaintiff's condition at the time the statements were made and was relevant and probative and not substantially outweighed by the danger of any unfair prejudice.  Walker spoke with plaintiff at 2:02 p.m., about 30 to 60 minutes after the drugs were administered to plaintiff, and he recorded that plaintiff stated that he was traveling 65 to 70 miles per hour at the time of the collision, that his pain was 10 out of 10, and any movement aggravated his symptoms.  Walker testified that he wrote in his notes that plaintiff was "alert and oriented, well dressed, well nourished, and well hydrated."  He explained that alert and oriented meant that plaintiff was able to state the place and time of where he was during the exam and his person.  Walker also testified that nowhere in his notes was there a suggestion that plaintiff was incoherent, babbling, unable to understand Walker's questions, or that he failed to appropriately respond.  Plaintiff was alert and oriented times three to person, place, and time.  Plaintiff also denied that he had neck pain dizziness, shortness of breath, chest pain, abdominal pain, or headaches or blurred vision.  When specifically questioned whether Dilaudid can cause confusion if a patient has a severe injury and has three doses of the medication, Walker replied, "No."  Under those circumstances, he stated, it may mildly abate their pain, depending on the level of trauma.  Dr. Bear, the orthopedic surgeon who attended to plaintiff, testified that Dilaudid may affect cognitive function and coordination, but a pharmacist should be consulted concerning the effects of the drug.  Significantly, he testified that nothing in his notes contradicted Walker's notes that plaintiff was alert and oriented.

¶ 137   Billington, plaintiff's expert, opined that, when he was ejected from the motorcycle, plaintiff was traveling between 25 and 27 miles per hour, but he agreed that, *prior* to being ejected (*i.e.*, as he approached the tractors), plaintiff could have been traveling 65 to 70 miles per hour, which would be evidence of him failing to exercise due care, and then slowed down.  Further,

Burgmeier, defendants' expert, testified that plaintiff approached the tractors at a speed greater than was reasonable. Finally, Martin testified that plaintiff was "going fast."

¶ 138  The foregoing evidence does not reasonably show that plaintiff was anything other than alert and oriented at the time he spoke to Walker. Plaintiff's statements to Walker concerning his speed were highly relevant to the issue of his contributory negligence. We reject plaintiff's argument that plaintiff was neurologically compromised, as evidenced by his concussion diagnosis and his amnesia about the incident. Again, Walker's testimony reasonably reflects otherwise, and the hospital records show that plaintiff's admission was made within 30 to 60 minutes of the administration of the medication, during which time he also told Walker that his pain was a 10 out of 10, perhaps indicating that the narcotics had not yet taken effect.

¶ 139  We decline plaintiff's request to take judicial notice of the "common side effects" of Dilaudid, which he asserts include confusion, lightheadedness, fainting, mental changes (such as agitation, confusion, and hallucinations), and severe weakness and drowsiness. He cites to no authority supporting his request.

¶ 140  We also reject plaintiff's argument that his statements to Walker are inadmissible hearsay. Although he acknowledges that the statements can fall under the exception for admissions against interest (Ill. R. Evid. 801(d)(2)(A) (eff. Oct. 15, 2015) (statement is not hearsay if it is offered against a party and is the party's own statement), he asserts that the circumstances of his being under the influence of narcotic pain medication, 10 out of 10 pain, and a concussion show that the statements are not reliable and should not qualify for the exception. We reject this claim for the reasons stated above. Walker testified about plaintiff's own statement shortly after the incident. Plaintiff's statements were not hearsay, but an admissible admission against his interest.

¶ 141   Furthermore, we agree with defendants that Walker's notes are admissible as business records. Ill S. Ct. R. 236 (eff. Aug. 1, 1992); Ill. R. Evid., 803(6) (eff. April 26, 2012). Plaintiff's admission about his rate of travel was memorialized in Walker's notes. Walker was properly allowed to testify about his notes, where defendants laid a sufficient foundation for them as business records. Illinois Rule of Evidence 602 (eff. Jan. 1, 2011), which requires personal knowledge for a witness to testify to a matter, does not apply here, because defendants sought admission of a document—Walker's notes—not plaintiff's direct personal statement.

¶ 142   In summary, the trial court did not err in allowing into evidence plaintiff's statements concerning his rate of travel as testified to by Walker.

¶ 143                    2. Burgmeier's Testimony Concerning Plaintiff's Actions

¶ 144   Next, plaintiff argues that the trial court erred in denying his motion *in limine* and allowing opinion testimony from Burgmeier, defendants' expert reconstructionist, where it was contrary to the testimony of defendants' own fact witnesses and unsupported by physical evidence at the scene. Specifically, plaintiff takes issue with the following opinions Burgmeier provided: (1) that plaintiff failed to keep a proper lookout for vehicles ahead of him: (2) followed at an improper distance; (3) drove at a speed that was greater than reasonable; and (4) passed Nimmer's tractor in the westbound lane.

¶ 145   Preliminarily, defendants respond that most of plaintiff's objections are forfeited for failure to include them in his post-trial motion and for failure to cite to facts in the record and objections that were made during Burgmeier's testimony to preserve his objections for appeal. We agree that plaintiff has forfeited review of several of his objections to Burgmeier's testimony. Plaintiff failed to include in his post-trial motion his objection to Burgmeier's opinions concerning plaintiff's violation of the Vehicle Code. As to the failure-to-keep-a-proper-lookout, greater-than-

reasonable-speed, and passing-in-the-westbound-lane arguments, plaintiff fails to cite testimony supporting these opinions. Thus, these arguments are forfeited

¶ 146   Turning to the merits of the remaining issue, namely, Burgmeier's opinions about the location of the impact, plaintiff contends that Burgmeier admitted that there was no debris in the westbound lane, but opined that the damage to the motorcycle occurred when the collision occurred. He ignored, according to plaintiff, Nimmer's and Martin's deposition testimony that contradicted his opinions. Plaintiff argues that Burgmeier's statement that there were no fluids in the westbound lane, because the radiator on the motorcycle had not ruptured, was erroneous when contrasted with scene photographs and testimony (putting the cycle's final rest at or near the point of impact), which clearly showed that the radiator tank had ruptured, that there was radiator fluid on the left side of the cycle, and that there was fluid on the ground at the place the cycle came to rest on northbound Pleasant Valley Road (not the westbound lane of Rockton Road). Plaintiff contends that there is no evidence supporting Burgmeier's opinions, such as debris or fluid south and west of the gouge marks. Plaintiff points to his expert's, Billington's, opinion that the marks were consistent with evasive action, not a passing maneuver, due to the sharp angle the cycle had to take to create them and the point of impact in northbound Pleasant Valley rather than Rockton Road. He also points to Martin's testimony that the cycle stopped at the place where the collision occurred, thus, putting the impact on northbound Pleasant Valley Road. Plaintiff maintains that, by allowing Burgmeier to allege multiple violations of the Vehicle Code against plaintiff without any factual basis, substantial prejudice accrued to plaintiff's case, affecting the trial's outcome.

¶ 147   In its written order on plaintiff's post-trial motion, the trial court, finding no error in the allowance of Burgmeier's testimony, noted that the identical issue had been raised in plaintiff's motion *in limine*, the transcript of which plaintiff had not offered, and that none of the arguments

addressed the expert's qualifications (which plaintiff had acknowledged, the court further noted, were sufficient). The trial court found that plaintiff was able to cross-examine Burgmeier and to point out all areas of disagreement. The court also determined that there was a sufficient foundation laid for the expert's testimony.

¶ 148 We similarly conclude that the trial court did not err in admitting Burgmeier's testimony concerning the point of impact. As the trial court noted, plaintiff did not object to Burgmeier's qualifications as an expert accident reconstructionist. His disagreements with the expert's opinion's, thus, do not go to their admissibility. It was for the jury to weigh Burgmeier's opinions against those of plaintiff's expert, Billington. There was nothing inherently incredible about his testimony, and we disagree with plaintiff's assertion that Burgmeier's opinions were speculative and based on conjecture. Burgmeier testified that Nimmer was in the eastbound lane of Rockton Road and that plaintiff was attempting to pass him in the westbound lane. He supported this opinion by noting that there were no skid marks showing emergency braking, which his indicative of evasive action, not a passing maneuver. Burgmeier further opined that the impact occurred in the westbound lane, the motorcycle rotated, it separated away from the tractor, overturned on its left side, and slid to its final resting spot in the northeast corner of the intersection. Burgmeier explained that the friction and scrape marks leading to the cycle's final resting spot occurred post-collision as the cycle, on its side, skidded or was dragged. The left side exhaust pipes lined up, he noted, with the scrape marks. He explained in detail, as we discussed above, how the paint and other marks and dents on the motorcycle and tractor supported his conclusions about how the cycle impacted the tractor. Although Burgmeier opined that the radiator did not rupture and other witnesses stated otherwise, he did testify that the presence of pooled fluids/debris indicates where something came to rest for a while (not, as others testified, the point of impact). Assuming the

jury credited the other witnesses' testimony that the radiator did rupture, it could still have reasonably credited Burgmeier's testimony that the presence of pooled fluid showed the place of rest.

¶ 149   In summary, the court did not err in allowing Burgmeier's testimony concerning the point of impact.

¶ 150                    3. Burgmeier's Demonstrative Evidence

¶ 151   Plaintiff next contends that the trial court erred in allowing Burgmeier's testimony concerning the demonstrative evidence, where it was not properly disclosed in discovery, did not comply with the rules of evidence, and lacked proper foundation.  Defendants respond that plaintiff has forfeited this issue for our review.  We agree.

¶ 152   In his post-trial motion, other than in a heading, plaintiff did not address Burgmeier's use of the demonstrative exhibits, nor did he address Illinois Supreme Court Rules 213 (eff. Jan. 1, 2018) (written interrogatories to parties) or 218 (eff. Jul. 1, 2014) (pre-trial procedure).  Plaintiff's failure to address the issue in his post-trial motion did not give the trial court the opportunity to explain its earlier ruling and impedes any appellate review.  Furthermore, as defendants note, plaintiff did not timely object to the use of the exhibits.  On October 6, 2017, in their Rule 213(f)(3) disclosures, defendants advised plaintiff that Burgmeier may use the exhibits, and, five weeks before his deposition, defendants advised plaintiff how they intended to use the actual tractor and the exemplar motorcycle.  However, plaintiff did not raise an objection until Burgmeier's evidence deposition had started.   His lack of diligence works to his peril on appeal.  *Forest Preserve Dist. of Cook County v. South Holland Trust & Savings Bank*, 38 Ill. App. 3d 873, 876 (1976) (failure to raise an issue in a timely post-trial motion following a jury trial waives the issue for appeal if the appellant also failed to object at the time of the alleged error).

¶ 153    An additional basis for finding his argument forfeited is that plaintiff has failed to include a sufficient record in this appeal.  As defendants point out, he did not include in the record the trial court's ruling on his objection.  Nor is there a bystander's report or agreed statement of facts on this issue.  Accordingly, we must presume that the trial court's order was in conformity with the law and had a sufficient factual basis.  *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) ("[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis.  Any doubts which may arise from the incompleteness of the record will be resolved against the appellant.").

¶ 154    Forfeiture aside, we cannot conclude that the trial court erred in allowing Burgmeier to utilize the demonstrative exhibits.  The admission of evidence pursuant to Rule 213 is within the trial court's discretion, and its ruling will not be disturbed absent an abuse of discretion.  *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 109 (2004).  Rule 213 disclosure requirements are mandatory and subject to strict compliance by the parties.  *Id.*  However, the failure to comply with Rule 213 does not automatically require the exclusion of the noncomplying party's witnesses or testimony.  *Id.*  The supreme court has held that, in determining whether the exclusion of a witness or testimony is a proper sanction for nondisclosure, the court "must consider" the following factors: (1) the surprise to the adverse party; (2) the prejudicial effect of the testimony; (3) the nature of the testimony; (4) the diligence of the adverse party; (5) the timely objection to the testimony; and (6) the good faith of the party calling the witness.  *Id.* at 110; *Kovera v. Envirite of Illinois, Inc.*, 2015 IL App (1st) 133049, ¶ 59.

¶ 155   Here, plaintiff cannot reasonably claim surprise, where defendants made their disclosures over 20 months before trial, identifying the tractor and exemplar motorcycle and producing photographs of the vehicles.  Six months prior to trial, on January 24, 2019, the parties stipulated that the photographs were fair and accurate depictions of the vehicles and relevant to the issues in the case.   (They did, however, stipulate that they retained all arguments concerning the photographs, other than foundation.)  Further, we cannot conclude that there was undue prejudice to plaintiff here, where timely notice was provided and plaintiff was offered ample time to raise objections.  As to the nature of the evidence, this factor also does not warrant reversal, where plaintiff has never questioned that the tractor was not the one involved in the collision and that the motorcycle was not of the same model as the one he drove.  Next, as to whether plaintiff showed diligence, as noted, plaintiff has had notice since 2017 that the vehicles provided bases for Burgmeier's testimony and knew for five weeks prior to his deposition that Burgmeier intended to use the vehicles as part of his testimony, yet plaintiff remained silent until after the deposition had commenced.  His objection was rather untimely, where plaintiff knew that Burgmeier was leaving the country for a planned vacation and could not be recalled to testify.  Finally, given their disclosures, we believe that defendants could reasonably be viewed as having operated in good faith with respect to the use of the exhibits.

¶ 156   We are also unpersuaded by plaintiff's assertion that the tractor and exemplar motorcycle lack relevance under Illinois Rule of Evidence 401 (eff. Jan. 1, 2011), which defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Plaintiff urges that the use of the demonstrative exhibits should have been barred under Illinois Rule of Evidence 403 (eff. Jan. 1, 2011), which provides that "[a]lthough relevant,

evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Plaintiff fails to convince us that the use of the exhibits was unfairly prejudicial to him or substantially outweighed their probative value to the jury. Burgmeier used the exhibits to show the points of impact between the vehicles and explained that reconstructionists examine how points align with each other and that it need not be done dynamically, but can be done statically.

¶ 157　Finally, we conclude that defendants laid a proper foundation for the use of the exhibits. The stipulation noted above explicitly stated that foundational arguments concerning the photographs of the exhibits were waived. We cannot conclude otherwise concerning the actual exhibits themselves. Indeed, the stipulation can be viewed as an admission that a sufficient foundation exists for the use of the actual vehicles as exhibits. Further, during Burgmeier's testimony, plaintiff did not object that the exemplar motorcycle was not identical to his own.

¶ 158　In summary, there was no error in allowing the testimony concerning the demonstrative exhibits.

¶ 159　　　　　　　　　　　　　　D. Jury Instructions

¶ 160　Plaintiff's final argument is that the trial court abused its discretion in declining plaintiff's request to instruct the jury concerning Nimmer's negligence. He takes issue with the fact that the court allowed defendants' proffered IPI 20.01 to be given to the jury.

¶ 161　"[T]he parties are entitled to have the jury instructed on the issues presented, the principles of law to be applied, and the necessary facts to be proved to support its verdict." *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 505 (2002). The threshold for giving an instruction in a civil case is "not a high one." *Heastie v. Roberts*, 226 Ill. 2d 515, 543 (2007). "All that is required to justify the

giving of an instruction is that there be some evidence in the record to justify the theory of the instruction. The evidence may be insubstantial." *Id.* The decision to give or deny a tendered instruction is within the discretion of the trial court. *Dillon*, 199 Ill. 2d at 505. So long as the tendered instructions clearly and fairly instruct the jury, a party is entitled to instructions on any theory of the case that is supported by the evidence. *Snelson v. Kamm*, 204 Ill. 2d 1, 27 (2003). Generally, a trial court's decision to grant or deny an instruction is reviewed for abuse of discretion. *Dillon*, 199 Ill. 2d at 505.

¶ 162 Plaintiff's proposed instruction contained four sub-parts: (1) failing to keep a proper lookout for other vehicles; (2) failing to exercise due care when making a turn; (3) turning left from the shoulder of the road; and (4) failing to exercise due care by driving his tractor toward a location where he knew or should have known there was a high risk of striking a person. Defendants' proposed instruction contained two sub-parts: (1) failing to keep a proper lookout for other vehicles when turning from the shoulder of the road; and (2) turning left from the shoulder of the road. The trial court determined that the only evidence plaintiff presented of Nimmer's negligence was that Nimmer improperly turned left from the shoulder of the road and failed to keep a proper lookout for other vehicles when doing so. It accepted defendants' proposed instruction.

¶ 163 In his post-trial motion, plaintiff raised only the court's refusal to give sub-part (d) ("Failing to exercise due care by driving his tractor toward a location where he knew or should have known there was a high risk of striking a person") of his proffered instruction. In its written order on the post-trial motion, the trial court ruled that plaintiff's post-trial motion failed to provide a record from which it could determine the discussions at the jury-instruction conference, whether there was any evidence offered to support the giving of a different instruction, and the actual instruction

given to the jury. The court also noted that plaintiff's argument was based on a version of his complaint that was not the one on which trial was conducted:

"The fourth amended complaint was filed *** due to the fact that plaintiff's injuries were indivisible and in their entirety caused by this accident. There was no dispute as to that fact. The primary reason for the 4th Amended Complaint was because plaintiff had produced no witness who was qualified to identify when each of plaintiff's injuries were incurred. *** Plaintiff has failed to provide a record from which it could be gleaned the discussions at the jury instruction conference to inform 1) any proffered instruction(s) that was/were not given over plaintiff's objection; 2) whether anything was offered in the way of evidence which would support the giving of (a) different instruction(s); 3) the actual instruction(s) given the jury."

Thus, it denied plaintiff's post-trial motion.

¶ 164    Here, preliminarily, defendants argue that plaintiff has forfeited his claims concerning the jury instruction, where he did not raise the issue concerning sub-part (a) ("Failure to keep a proper lookout") in his post-trial motion and where he fails to cite to applicable authority in support of his argument. In reply, plaintiff agrees that he did not specifically argue that it was error to tie sub-part (a) to sub-part (d) in the instruction, because it limited negligence to turning from the shoulder, but he contends that he did generally argue that the instruction failed to apprise the jury of all of the negligence available for it to consider. He also concedes to incorrectly citing to a case involving Indiana law concerning the general duty of motorists not to cause harm and now cites to a case involving Illinois law instead. See *Colonial Inn Motor Lodge ex rel. Cincinnati Insurance Co. v. Gay*, 298 Ill. App. 3d 32, 43 (1997). We conclude that the argument is forfeited, but we choose to reach the merits of the argument.

¶ 165   As to sub-part (a), the failure to keep a proper lookout, plaintiff contends that a driver's duty to use reasonable care in driving includes keeping a proper lookout for other vehicles when making a turn.  The given instruction included turning from the shoulder as its item (b).  By tying the two instructions, he argues, and making (a) contingent on and redundant with a finding of negligence under (b), the jury was prevented from considering evidence of negligence if it found that tractors were traveling on the roadway instead of the shoulder.  He notes Billington's testimony that Nimmer's and Martin's testimony that they looked behind them as they approached Pleasant Valley Road was not consistent with the evidence, as the cycle was in plain view from the time it approached the intersection and that the view was unobstructed for 2200 feet.  Nimmer, plaintiff notes, had a duty to use reasonable care in driving his tractor.  A reasonable person does not look and not see under these circumstances.

¶ 166   We reject plaintiff's argument.  As to sub-part (a), the failure to keep a proper lookout, there was no evidence that, if Nimmer was traveling in the eastbound lane of Rockton Road, he had a duty to keep a lookout for vehicles behind him that might attempt to pass him at the intersection as he turned left.  Indeed, plaintiff's expert Billington testified that the tractors operated on the road shoulder prior to the collision, but, on cross-examination, he agreed that, if Nimmer's tractor was in the eastbound lane of Rockton Road prior to the collision, he had no legal duty to look behind him to see if someone was attempting to pass him.  He also agreed that, if Nimmer operated his tractor on the paved portion of the road when he began his turn, the cycle was engaged in a passing maneuver, and the accident occurred as plaintiff passed the tractor, then then proximate cause of the collision would be plaintiff's improper passing maneuver.  Thus, the jury instruction given was consistent with plaintiff's expert's testimony.

¶ 167   As to sub-part (d), plaintiff argues that there was adequate evidence to support the proposed instruction.  He notes that Nimmer testified that he saw plaintiff's body go up and over the front of his tractor and come to rest on the northeast shoulder; Billington testified that there was nothing interfering with Nimmer's ability to steer the tractor and that he steered it to the northeast shoulder in a controlled maneuver; and Nimmer and Martin both testified that Nimmer ran over plaintiff on the northeast corner.  Plaintiff maintains that a jury is capable to determine that the tractor driver behaved negligently based on the foregoing evidence and that his fourth amended complaint alleged the exact negligence the court excluded from the instructions.  Defendants respond that plaintiff's instruction included that Nimmer struck plaintiff's leg with the tractor after he was ejected from the motorcycle.  They assert that plaintiff did not present any evidence that this action was separate and apart from the tractor's left turn and the collision between the vehicles.  Also, defendants argue that plaintiff's post-trial motion only generally cited to a portion of Nimmer's trial testimony and failed to cite to evidence supporting an instruction that Nimmer failed to exercise due care by driving his tractor toward a location where he knew or should have known that there was a high risk of striking a person.  Thus, the trial court properly exercised its discretion in refusing to give plaintiff's proffered instruction.  We find no error.  We agree with defendants (and the trial court's comments that plaintiff produced no witness who identified when each of his injuries occurred) that plaintiff presented no evidence that Nimmer's alleged negligence in driving to the shoulder was a separate act from his turn and collision with the motorcycle.

¶ 168   We further agree with defendants that, even if the court erred in giving the instruction, it does not constitute reversible error, because the given instruction did not mislead the jury and there were multiple theories upon which the jury could have found that defendants were not liable for plaintiff's injuries. Defendants asserted two defenses: (1) Nimmer was not negligent in operating

his tractor; and (2) plaintiff's contributory negligence exceeded 50%, thus, barring his recovery. Plaintiff did not object to the instruction directed at his contributory negligence. The jury returned a general verdict for Nimmer and Martin and against plaintiff and did not specify any findings of fact. Plaintiff, as defendants note, did not submit a special interrogatory as to the basis of the jury's finding. Thus, he cannot now complain, in their view. We agree. The general verdict created a presumption that the jury found in defendants' favor on every defense raised, including on his contributory negligence, thus, plaintiff was not prejudiced by any alleged error in the trial court's refusal to tender his proffered instruction.

¶ 169                    III. CONCLUSION

¶ 170   For the reasons stated, the judgment of the circuit court of Winnebago County is affirmed.

¶ 171   Affirmed.